MAINE SUPREME JUDICIAL COURT                              Reporter of Decisions
Decision:      2018 ME 116
Docket:        Aro-17-125
Argued:        May 15, 2018
Decided:       August 14, 2018

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MATTHEW R. DAVIS

GORMAN, J.

[¶1] Matthew R. Davis appeals from a judgment of conviction entered by the trial court (Aroostook County, *Hunter, J.*) for a total of ten charges—two counts of intentional or knowing murder, 17-A M.R.S. § 201(1)(A) (2017); four counts of arson (Class A), 17-A M.R.S. § 802(1)(A) (2017); one count of theft (Class B), 17-A M.R.S. § 353(1)(B)(1) (2017); two counts of theft (Class C), 17-A M.R.S. § 353(1)(B)(4) (2017); and one count of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A) (2017)—after a jury trial. Davis contends that the court erred by denying his motion *in limine* that sought to exclude certain identification testimony.[1] He argues that the out-of-court identification

---

[1] Davis also argues that the court erred by denying his request to present rebuttal expert witness testimony regarding the unreliability of eyewitness identifications and that the evidence was

2

was produced by an impermissibly suggestive procedure that rendered the testimony unreliable and therefore inadmissible. We conclude that the court did not err by allowing the jury to consider the identification testimony because the witness's identification was independently reliable and we therefore affirm the judgment.

## I. BACKGROUND

A.    The Events of September 23, 2013

[¶2]    "Viewed in the light most favorable to the jury's verdict, the evidence in the record supports the following facts." *State v. Fahnley*, 2015 ME 82, ¶ 2, 119 A.3d 727. In the early morning hours of September 23, 2013, Davis drove his tow truck through the gate at Katahdin Forest Products in Oakfield. Thereafter, he backed the tow truck into one of Katahdin's buildings and broke into and set fire to another of Katahdin's buildings. Davis then stole a pickup truck owned by Katahdin and fled.

[¶3] After driving only about a half mile, Davis stopped at Heidi Pratt and Michael Kitchen's home in Oakfield. There he broke into the house and shot

insufficient for the jury to find every element of each offense beyond a reasonable doubt. We find these arguments unpersuasive and do not address them further.

and killed both Pratt and Kitchen.  Davis then started a fire inside the house, set fire to the Katahdin pickup truck, and went into Pratt and Kitchen's garage.

[¶4]  Inside the garage, Davis broke into a pickup truck owned by Kitchen's family business and backed that truck through the closed garage door. As Davis crashed through the garage door, one of Pratt and Kitchen's neighbors saw Davis driving the truck.  Davis fled from Pratt and Kitchen's property in the truck and, after driving approximately four miles, parked the truck near a camp on Mattawamkeag Lake.  Davis broke into the camp's garage and stole a kayak and a paddle.  Before leaving the camp, he set fire to Kitchen's truck.  Davis then paddled the kayak to the other side of Mattawamkeag Lake where he broke into a camp on Beaver Dam Point Road.

[¶5]  Later that morning, Davis stole a car from a different property off Beaver Dam Point Road.  By this time, the discovery of Davis's tow truck at the site of the Katahdin Products fire caused Maine State Troopers to be in the area and looking for him.  A State Trooper stopped the car Davis was driving on Beaver Dam Point Road.  After positively identifying Davis, the trooper took him into custody.

[¶6]  Based on those events, a grand jury (Aroostook County) indicted Davis on November 7, 2013, charging him with two counts of intentional or

4

knowing murder, 17-A M.R.S. § 201(1)(A); four counts of arson (Class A), 17-A M.R.S. § 802(1)(A); one count of theft (Class B), 17-A M.R.S. § 353(1)(B)(1); two counts of theft (Class C), 17-A M.R.S. § 353(1)(B)(4); and one count of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A).

B.    Motion *in Limine* and Trial

[¶7]  On August 11, 2014, Davis moved *in limine* for the court to exclude any identification testimony from the neighbor who saw Davis crash through Pratt and Kitchen's garage door and then flee in the truck.  Two years later, on August 11 and 16, 2016, the court (*Hunter, J.*) held testimonial hearings related to the motion *in limine*.  By order dated August 18, 2016, the court made the following findings of fact, which are supported by competent evidence in the motion record.  *See State v. Prinkleton*, 2018 ME 16, ¶ 2, 178 A.3d 474.

[¶8]   At approximately 4:00 a.m. on September 23, 2013, Pratt and Kitchen's next-door neighbors awoke to the sound of multiple gunshots.  They went outside to see what was happening and saw that Pratt and Kitchen's home was on fire.  As one of the neighbors got close to the home, a truck crashed through the garage door.  The area where the truck came through the door was lit up by an exterior light located at the center peak of the garage.  In order to

determine if the driver was either Pratt or Kitchen, the neighbor looked through the truck's windshield and "locked eyes" with the truck's driver.

[¶9] The neighbor was standing several feet from the front of the vehicle when it crashed through the garage door, and he looked directly at the driver of the truck for approximately four seconds. He did not immediately recognize the driver but could tell that it was neither Pratt nor Kitchen. As the vehicle sped out of the driveway, both neighbors ran back toward their house and called 9-1-1. Later that morning, law enforcement officers spoke with the neighbor who had locked eyes with the driver (the witness) and the witness said that he did not know the identity of the driver, but he described the driver as a white male with a light complexion, no facial hair, a short "buzzed off" haircut, and really big eyes.

[¶10] When Davis was taken to the Aroostook County Jail on September 24, 2013, the Aroostook County Sheriff's Department took a "booking photo" of him. Shortly thereafter, the Maine State Police issued a press release indicating that Davis had been arrested in connection with Pratt and Kitchen's deaths. This press release caused various news media outlets to request the booking photo from the jail, and, pursuant to its policy, the jail released the booking photo, which depicted Davis's face and shoulders as well

as the "standard orange jail clothing" he was wearing. The Bangor Daily News then posted Davis's photograph on its Facebook page.

[¶11] Before detectives had a chance to meet with the witness to show him a photographic lineup, an acquaintance informed him that the Bangor Daily News had posted a photograph of the suspect on its Facebook page. The witness went to the Facebook page and instantly recognized Davis as the man he saw driving the pickup truck out of Pratt and Kitchen's garage the previous morning.

[¶12] When a detective did meet with the witness on the afternoon of September 24, 2013, the witness told him that he had already seen Davis's booking photograph on Facebook. Rather than attempting to show the neighbor a photographic array at that point, the detective took a statement in which the witness indicated that he was one hundred percent certain that Davis was the man he saw through the truck windshield.

[¶13] In ruling on Davis's motion *in limine* to bar the witness's out-of-court identification of Davis from being admitted at trial, the court applied to these factual findings the two-part test articulated in *State v. Nigro*, 2011 ME 81, ¶¶ 21-23, 24 A.3d 1283. First, the court concluded that the jail's release of Davis's booking photograph constituted "state action." Although it

determined that the State was not attempting to "overtly and impermissibly suggest" to the witness that Davis committed the crimes at issue, the court concluded that Davis had proved by a preponderance of the evidence that the process by which the witness viewed Davis's booking photograph online was impermissibly suggestive. After shifting the burden to the State, the court concluded that the State proved by clear and convincing evidence that the witness's identification of Davis was nonetheless independently reliable. The court denied Davis's motion *in limine*, permitting the witness to provide identification testimony at trial.

[¶14] Following an eleven-day jury trial in December of 2016,[2] the jury returned a guilty verdict on all ten counts. On February 10, 2017, the court sentenced Davis to concurrent life sentences for the murders of Michael Kitchen and Heidi Pratt and concurrent sentences on the remaining

---

[2] Davis was indicted in Aroostook County, but the jury trial took place in Washington County after the court (*Hunter, J.*) granted Davis's motion to change venue.

convictions. Davis appeals.[3] *See* 15 M.R.S. § 2115 (2017); M.R. App. P. 2(b)(2)(A) (Tower 2016); *see also* M.R. App. P. 2B(b)(1).[4]

## II. DISCUSSION

[¶15] Davis argues that the court erred by denying his motion *in limine* and permitting the witness to testify about seeing him crash the truck through Pratt and Kitchen's garage and then flee in the truck. He challenges the court's admission of the identification testimony on two grounds. First, on due process grounds, he argues that the jail's release of his booking photograph constituted improper state conduct that led to an impermissibly suggestive identification procedure rendering the witness's identification unreliable and therefore inadmissible. Second, he contends that, even absent improper state conduct, the process by which the witness identified Davis was impermissibly suggestive and that the court erred by not excluding the testimony on evidentiary grounds. We address Davis's arguments in turn and review the trial court's factual findings for clear error, its legal conclusions de novo, and its

---

[3] On February 24, 2017, Davis filed a separate application to appeal his sentence. *See* 15 M.R.S. § 2151 (2017); M.R. App. P. 20 (Tower 2016). The Sentence Review Panel granted Davis's application on April 24, 2017, and ordered that the sentence review would be considered along with the merits of this direct appeal. Because Davis has elected not to challenge his sentences in this appeal, the sentence review application has been effectively withdrawn.

[4] The Maine Rules of Appellate Procedure were restyled and are effective for appeals commenced on or after September 1, 2017. *See* M.R. App. P. 1 (restyled Rules). Davis filed this appeal before September 1, 2017, thus the restyled Rules of Appellate Procedure do not apply.

ultimate decision to deny the motion *in limine* for an abuse of discretion.[5] *See*

*Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283; *State v. Rickett*, 2009 ME 22, ¶ 9, 967

A.2d 671.

A.      Due Process and State Action

[¶16]  When a criminal defendant challenges the reliability of a witness's

identification on due process grounds, we apply a two-part test to determine

whether the witness's "out-of-court identification should be admitted in

evidence." *Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283; *see State v. Kelly*, 2000 ME

107, ¶ 19, 752 A.2d 188;  *State v. True*, 464 A.2d 946, 950 (Me. 1983).  As we

explained in *Nigro*,

> First, the defendant must prove, by a preponderance of the evidence, that the identification procedure was suggestive. Second, if the court finds that the procedure was suggestive, the State then bears the burden of proving, by clear and convincing evidence, that in the totality of the circumstances the identification, although made under a suggestive procedure, is nevertheless reliable.

---

[5] Although Davis brought his challenge to the witness's identification pursuant to a motion *in limine*, *see* M.R.U. Crim. P. 12(c), his primary argument that the admission of the identification testimony obtained through alleged State action would violate his due process rights could have been appropriately raised in a motion to suppress. *See* M.R.U. Crim. P. 41A(a)(4) ("A defendant may move to suppress as evidence any . . . out-of-court or in-court eyewitness identifications of the defendant."). When challenging evidence "on the ground that it was illegally obtained," such as in violation of due process, the proper procedural motion is a motion to suppress. *See* M.R.U. Crim. P. 41A(a).  Here, where Davis is claiming a violation of due process and, alternatively, challenging the admissibility of evidence on evidentiary grounds, a motion *in limine* is also appropriate. *See* M.R.U. Crim. P. 12(c).

2011 ME 81, ¶ 21, 24 A.3d 1283 (citations omitted) (quotation marks omitted). If the defendant meets his burden of proof as to the first step, an identification may still be admissible if the State proves by clear and convincing evidence that the "reliability [of the witness's identification] outweighs the corruptive influence of the suggestive procedure." *Id.* ¶ 23.

[¶17]  This test, articulated by the United States Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 198-201 (1972), is grounded in a criminal defendant's due process rights, pursuant to the United States Constitution.[6]  *See True*, 464 A.2d at 949-50.  The purpose of the test is to "protect a criminal defendant from the use against him at trial of an out-of-court identification that is conducive to an irreparable mistaken identification or so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Id.* (citation omitted) (quotation marks omitted).  "The ultimate concern is the reliability of the out-of-court identification." *Id.* at 950.

[¶18]  At the first step, a defendant can meet his burden by proving by a preponderance of the evidence that the identification procedure "tended to increase the likelihood of misidentification." *Kelly*, 2000 ME 107, ¶ 19, 752 A.2d 188 (quotation marks omitted).  We have explained that "[a]mong the most

---

6  U.S. Const. amend. XIV, § 1.

suspect of all procedures is a confrontation in which a single subject is presented to the witness [by the State] in such a way that the witness knows that the police believe that subject to be the perpetrator of the crime." *True*, 464 A.2d at 950. The danger of such a suggestive identification procedure "is that the witness, eager to cooperate with the police . . . will subtly alter his or her own recollected image of the perpetrator's appearance and other characteristics to match those of the suspect presented." *Id.*

[¶19] In addition to proving that the procedure was suggestive, however, a defendant making a due process argument must prove at this initial step that the suggestive procedure was precipitated by "improper state conduct." *Perry v. New Hampshire*, 565 U.S. 228, 241, 245 (2012) ("The due process check for reliability . . . comes into play *only after* the defendant establishes improper police conduct." (emphasis added)); *see also Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2559 (2018). Because "[d]ue process of law is another name for *governmental* fair play," *In re Stanley*, 133 Me. 91, 95, 174 A. 93 (1934) (emphasis added), the defendant must prove that the *State* acted improperly with regard to the identification procedure. *Perry*, 565 U.S. at 232 ("We have not extended pretrial screening for reliability to cases in which the suggestive circumstances were not arranged by law enforcement officers.").

[¶20]  Thus, in the context of his due process challenge, Davis was required to prove by a preponderance of the evidence that the suggestive out-of-court identification was orchestrated by "improper state conduct."[7] *Id.* at 245; *see True*, 464 A.2d at 950 (explaining that the test "first requires the trial judge to determine whether the identification procedure *used by law enforcement personnel* was suggestive" (emphasis added) (quotation marks omitted)); *State v. St. Onge*, 392 A.2d 47, 50 (Me. 1978) ("The admissibility of an out-of-court identification turns upon . . . whether the *police* used an unnecessarily suggestive procedure in obtaining an out-of-court identification . . . ." (emphasis added)).

[¶21]  Our cases indicate that "improper state conduct," *Perry*, 565 U.S. at 245, occurs when state actors—typically law enforcement officers—are involved in influencing a witness's out-of-court identification in an impermissibly suggestive way.  *See e.g., Nigro*, 2011 ME 81, ¶¶ 5, 22, 24 A.3d 1283 (concluding that the procedure used by the State was "clearly suggestive" because an "MDEA agent" showed the confidential informant only two

---

[7] Because we have "long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process," *State v. Rosado*, 669 A.2d 180, 182 (Me. 1996) (quotation marks omitted), we decline to depart from the requirement that a due process challenge to an out-of-court witness identification requires "improper state conduct," *Perry v. New Hampshire*, 565 U.S. 228, 245 (2012).

photographs and both were of suspects); *St. Onge*, 392 A.2d at 50 (explaining that the State conceded the procedures were suggestive because the witness "was not shown a photograph of anyone but the Defendant" and law enforcement officers told the witness "that the subject of the photograph . . . was 'a good suspect'"). Conversely, when state actors do not arrange or otherwise directly influence the witness's identification in a suggestive way, there is no "improper state conduct." *Perry*, 565 U.S. at 245; *see, e.g., Kelly*, 2000 ME 107, ¶ 20, 752 A.2d 188 (concluding that the procedure was not "suggestive" because "the driver was presented an *array* of photographs without any improper, suggestive comments or other behavior *by the detective*" (emphases added)); *State v. Rolls*, 599 A.2d 421, 423-24 (Me. 1991) (concluding that the procedure was not suggestive because "[t]here were *no suggestive words used by the officers* before [the witnesses] made the selection from the lineup" that contained five men fitting the "descriptions of the attacker" (emphasis added)); *see also State v. Robinson*, 2015 ME 77, ¶ 32 n.8, 118 A.3d 242 (rejecting an argument that the court should have applied the two-step test for out-of-court witness identification because the test "focuses on government misconduct in identification procedures" and "there was no government misconduct involved in the [witness's] identification").

14

[¶22]  Here, although the court found that the jail's release of Davis's photograph was "state action," it did *not* find that the State acted improperly, explaining that "[t]here is no basis for the court to find" that law enforcement officers "overtly and impermissibly suggest[ed] to any witness that the person whose photo they released was guilty."  To the contrary, the court specifically found that detectives never showed the witness a photograph of Davis.  Although the court did not find that the State acted in a way that could be construed as directly suggesting to the witness that Davis was the individual who the witness saw on the morning of September 23, 2013, the court nevertheless concluded that Davis had "sustained his burden of proving to this court by a preponderance of the evidence that [the witness] was unintentionally exposed to an impermissibly suggestive identification procedure" when he viewed Davis's booking photograph online.  Based on this conclusion, the court proceeded to the second step of the *Nigro* test.

[¶23]  To the extent the trial court's decision includes a determination that there was improper state action, that was error.  *See Perry*, 565 U.S. at 248.  There was no "improper state conduct" here, *id.* at 245, when the jail released

a photograph of a suspect to a news outlet and took no other actions with regard to the witness's out-of-court identification.[8]

[¶24] Because this case is not about any improper state conduct, it does not implicate due process concerns. In other words, the admission of the witness's out-of-court identification did not violate Davis's due process rights and Davis was not entitled to a pretrial determination of the reliability of the identification on due process grounds. *See id.* at 248. That, however, does not end our consideration of Davis's arguments.

B.    Reliability of Witness Identification

[¶25] Davis argues that pursuant to the Maine Rules of Evidence, even if the State did not act improperly, the procedure by which the witness viewed the booking photograph was suggestive and "conducive to an irreparable mistaken identification," *True*, 464 A.2d at 949 (quotation marks omitted), such that the identification was wholly unreliable. We agree that trial courts can and

---

[8] We note that other jurisdictions have reached the same conclusion under similar circumstances. *See, e.g.*, *State v. Goudeau*, 372 P.3d 945, 980 (Ariz. 2016) ("In sum, although police disseminated Goudeau's composite sketch and photo to the media, there is no evidence that police attempted to influence any of these witnesses' pretrial identifications, for example, by arranging for or encouraging victims to view the media coverage."); *O'Connell v. State*, 742 N.E.2d 943, 948 (Ind. 2001) ("A witness' viewing of a suspect's photograph through the media does not ordinarily constitute an impermissibly suggestive identification procedure because it is not engineered by prosecution or law enforcement agencies."); *State v. Webster*, 104 A.3d 203, 208 (N.H. 2014) ("Although law enforcement may have disseminated the photograph to the media, absent evidence that law enforcement also orchestrated the viewing of that photograph by a witness, there is no [improper] state action . . . .").

should examine the reliability of a witness's out-of-court identification that involves highly suggestive behavior, even in circumstances that do not involve "improper state conduct." *Perry*, 565 U.S. at 245.

[¶26] As we have recently recognized, there is "a significant body of scientific research" that has "provided new insights into the fallibility of eyewitness identifications." *State v. Mahmoud*, 2016 ME 135, ¶ 13, 147 A.3d 833. Additionally, our "ultimate concern," *True*, 464 A.2d at 950, when a defendant challenges an eyewitness identification is "that the jury not hear eyewitness testimony unless that evidence has aspects of reliability," *Manson v. Brathwaite*, 432 U.S. 98, 112 (1977). Because "reliability is the linchpin in determining the admissibility of identification testimony," *id.* at 114, and "the annals of criminal law are rife with instances of mistaken identification," *United States v. Wade*, 388 U.S. 218, 228 (1967), trial courts must allow litigants to test the reliability of a witness's out-of-court identification—pursuant to the Maine Rules of Evidence—when the identification may have been tainted by suggestive circumstances. As the New Jersey Supreme Court held nearly seven years ago,

> Because of the pivotal role identification evidence plays in criminal trials, and the risk of misidentification and wrongful conviction from suggestive behavior—whether by governmental or private actors—a private actor's suggestive words or conduct will require

> a preliminary hearing . . . in certain cases to assess whether the identification evidence is admissible.

*State v. Chen*, 27 A.3d 930, 942 (N.J. 2011).

[¶27]  Pursuant to the Maine Rules of Evidence, trial courts serve an important "gatekeeping function," *State v. Hinkel*, 2017 ME 76, ¶ 8, 159 A.3d 854, by admitting only evidence that is relevant and competent, and that a jury could determine is reliable, *see* M.R. Evid. 102, 104(a), 401-403, 601.  Like any other evidence, evidence of an out-of-court identification is admissible only if it is relevant, competent, and reliable.  If a witness's out-of-court identification is unreliable because of suggestive circumstances, that testimony may no longer be relevant because it does not have "any tendency to make a fact more or less probable."  M.R. Evid. 401; *see* M.R. Evid. 402.  If a witness's identification is tainted by suggestive circumstances creating a "substantial likelihood of *irreparable* misidentification," *True*, 464 A.2d at 949-50 (emphasis added) (quotation marks omitted), and a jury could not find that identification to be independently reliable, the witness is not likely competent to testify because he or she did not have a "reasonable ability to perceive" or "remember" the suspect, M.R. Evid. 601(b)(3)-(4).

[¶28]  Because unreliable identifications are likely to mislead a jury and create unfair prejudice for defendants, the admission of an unreliable

identification into evidence would be error. *See* M.R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice [or] misleading the jury . . . ."); *Commonwealth v. Johnson*, 45 N.E.3d 83, 90 (Mass. 2016) ("The danger of unfair prejudice arises because the accuracy of an identification tainted by suggestive circumstances is more difficult for a jury to evaluate.").

[¶29] Just as is true with a preliminary ruling by the court that a witness is competent to testify, *see* M.R. Evid. 601, or that an expert's opinion satisfies the foundational requirements for expert testimony, *see* M.R. Evid. 702, 703, a court's ruling that the identification evidence is worthy of the jury's consideration merely represents the threshold determination of admissibility. It is up to the jury to decide what, if any, weight it should give to the admitted identification testimony. *See State v. Dube*, 2016 ME 50, ¶ 13, 136 A.3d 93 ("Once the trial court has determined that a witness's testimony is admissible, [t]he weight and significance accorded the evidence and the evaluation of witness credibility are the exclusive province of the jury." (quotation marks omitted)). Therefore, even when the court determines that identification evidence is sufficiently reliable to be admissible, the defendant remains free to contest and challenge the reliability of that evidence before the jury.

[¶30]  Given these evidentiary principles, and the motion filed by Davis, the trial court was required to examine the witness's identification testimony to ensure that it was relevant and competent, and that a jury could determine it was reliable.  After reviewing the evidence presented, the trial court correctly determined that Davis proved by a preponderance of the evidence that the circumstances surrounding the witness's identification of him were suggestive. *See Nigro*, 2011 ME 81, ¶ 22, 24 A.3d 1283.  As discussed above, the witness was informed by an acquaintance that there was an online photograph of *the* individual the State arrested in connection with Pratt and Kitchen's murders. With that prompt, the witness viewed Davis's photograph.  Although the State was not involved, the witness's identification of Davis did occur after a photograph of Davis was "presented to the witness in such a way that the witness knows that the police believe that subject to be the perpetrator of the crime."  *True*, 464 A.2d at 950; *see Nigro*, 2011 ME 81, ¶ 22, 24 A.3d 1283 ("Numerous courts, including our own, have condemned the display of a single photograph as an inherently suggestive identification practice."); *Mysholowsky v. New York*, 535 F.2d 194, 197 (2nd Cir. 1976) ("We have consistently condemned the exhibition of a single photograph as a suggestive practice . . . .").

[¶31]   Because circumstances were suggestive, the trial court appropriately considered the independent reliability of the witness's identification.  In that process, the court found that the State proved that (1) the witness had an adequate opportunity to view the suspect for four seconds; (2) the witness's "attention was directed into the interior of the vehicle for a very specific purpose"; (3) the witness's initial description of a white male with "buzzed off" hair, big eyes, and no facial hair was "reasonably consistent with the photos taken of [Davis] subsequent to his arrest"; (4) the witness indicated that he was one hundred percent certain Davis was the man he saw driving the truck; and (5) "the passage of approximately a day and a half" was not "an extended time period that . . . calls into question the reliability" of the witness's recollection.

[¶32]  The court's findings on these factors are supported by competent evidence in the record, and we conclude that it did not err in its ultimate conclusion that the witness's out-of-court identification was reliable "in the totality of the circumstances."  *Kelly*, 2000 ME 107, ¶ 19, 752 A.2d 188; *see Nigro*, 2011 ME 81, ¶ 24, 24 A.3d 1283.  After concluding that the witness's identification was reliable[9]—a conclusion supported by its findings and the

---

[9]   In those cases where a court determines that the identification evidence is admissible, the defendant may request that the jury be instructed on "the fallibility of eyewitness identifications."

record—the court did not abuse its discretion by deciding to admit the identification testimony. *See Nigro*, 2011 ME 81, ¶¶ 21-23, 24 A.3d 1283. Thus, we affirm the court's judgment. *See State v. Watson*, 2016 ME 176, ¶ 10, 152 A.3d 152.

The entry is:

Judgment affirmed.

Tina Heather Nadeau, Esq. (orally), The Law Office of Tina Heather Nadeau, PLLC, Portland, for appellant Matthew R. Davis

Janet T. Mills, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Aroostook County Superior Court docket number CR-2013-137
FOR CLERK REFERENCE ONLY

---

*State v. Mahmoud*, 2016 ME 135, ¶ 13, 147 A.3d 833. Davis made that request here, and the court gave an appropriate instruction.