STATE OF MAINE                              UNIFIED CRIMINAL DOCKET
KENNEBEC, ss.                               LOCATION: AUGUSTA
                                            Docket No. KENCD-CR-18-451


STATE OF MAINE,                    )
                                   )
v.                                 )        ORDER ON MOTION TO SUPPRESS
                                   )
JAHSUN CAMPBELL,                   )
            Defendant              )


Defendant has been charged with two counts of Aggravated Trafficking in Scheduled Drugs, Class A pursuant to 17-A M.R.S.A. § 1105-A(1)(E)(1). Before the court is Defendant's Motion to Suppress filed on June 4, 2018 and argued before this court on August 23, 2018.

## BACKGROUND

In November 2017, law enforcement officers, Officer Daryl Gordon and Detective Duane Cloutier of the Waterville Police Department (hereinafter "Waterville PD") apparently orchestrated controlled buys with the Defendant through the help of a confidential informant (hereinafter "CI") and a confidential defendant (hereinafter "CD"). At the Motion to Suppress Hearing, Detective Cloutier testified that the Defendant's previous girlfriend, Shantasia Bethea-Lucas, was a well-known alleged drug dealer in the Waterville area. Detective Cloutier became aware of Ms. Bethea-Lucas (also known by her street name "Olivia") in 2015, during a previous investigation. On November 1, 2017, a CI informed Detective Cloutier that Ms. Bethea-Lucas was again dealing cocaine in the Waterville area. Detective Cloutier had known the CI for about a year and knew that the CI had previously struggled from time to time with drug addiction. With the assistance of the CI, a controlled buy was set up and the CI bought crack cocaine from Ms. Bethea-Lucas and her boyfriend, who called himself "Tory." After the controlled buy was completed, the CI met up with Detective Cloutier again and provided the drugs purchased and a phone number

for "Tory." After a field test, the substances given to Detective Cloutier from the CI were determined to be crack cocaine.

On November 14, 2017, a second buy was planned after the CI contacted Detective Cloutier informing him that the CI would be able to buy from Ms. Bethea-Lucas at a new location. The CI also informed Detective Cloutier that the CI had been contacted by "Tory" after the first buy and he asked the CI to provide information to a third party in order to receive funds from Western Union. When "Tory" asked for the CI's assistance he informed the CI that his government name was Jahsun Campbell, the Defendant's name. Once Detective Cloutier received the Defendant's name, he conducted a Facebook search and found only one (1) person with the name "Jahsun Campbell" on the social media website. On the Facebook page there were around twelve (12) pictures of the Defendant in several positions. On November 15, 2017, Detective Cloutier sent a single picture from this Facebook profile to the CI via text message and asked if the CI recognized the person. The CI informed Detective Cloutier that the man in the Facebook picture was the Defendant, Jahsun Campbell.

Officer Gordon organized a third buy on November 14, 2017 with a CD who had been contacted by Ms. Bethea-Lucas and the Defendant to buy crack cocaine. This CD was on probation for drug offenses and had a pending theft charge. The CD provided the telephone number of the person that contacted him. It was an exact match for the telephone number received by Detective Cloutier from CI for "Tory." Officer Gordon prepared the CD with a wire and observed the CD enter a building to conduct the third buy. Officer Gordon did not witness the actual buy, but did see the CD enter the building, remain for around thirty (30) minutes, and leave with crack cocaine. After the buy, Officer Gordon also showed the CD a picture of the Defendant from Facebook wherein the CD identified the man in the picture as Jahsun Campbell, also known as "Tory." The

2

picture from Facebook which was viewed by the CI and CD for identification purposes was not preserved by law enforcement or presented at hearing as evidence.

Nothing occurred in this matter until March of 2018 when the Defendant was arrested in Scarborough, Cumberland County, Maine for a warrant regarding the Defendant's pending charges in New York. Officer Gordon submitted an Affidavit in Support of Probable Cause outlining the above controlled buys. An arrest warrant was granted and led to the Defendant to being transferred into Waterville PD custody. The Defendant was brought by Waterville police officers to the Kennebec County Sheriff's Department where he spoke to police.

During this conversation, police and the Defendant discussed whether the Defendant had any valuable information that could be used by police. Officer Gordon informed the Defendant that if any of the information was helpful, they would forward it along to the District Attorney's Office to be considered in reference to the Defendant's charges. The Defendant offered to wear a wire, but Officer Gordon denied his request because he could not allow the Defendant to leave jail while he had a warrant. Thereafter, the conversation changed to the Defendant helping police convince Ms. Bethea-Lucas to assist them. The Defendant provided police with a code word to provide to Ms. Bethea-Lucas to help encourage her to assist police, but it was not successful and Ms. Bethea-Lucas did not assist police.

Officer Gordon claimed the conversation was requested by the Defendant and was known as a debrief, or an informal conversation without the presence of attorneys to discuss valuable information a defendant may have. The conversation was not recorded by Waterville PD. Law enforcement did not use any information from the Defendant in other cases, and nothing further came out of the conversation between the parties. The Defendant wasn't asked about the facts involving his charges and he didn't offer an incriminating evidence in that regard.

3

The Defendant brought this Motion to Suppress challenging the constitutionality of the photographic identification; the voluntariness of Defendant's statements; and any voice identification of the Defendant by police. Based on the evidence presented at the hearing, this court grants the Motion to Suppress in part and denies the Motion to Suppress in part.

## DISCUSSION

### I. Constitutionality of Photographic Identification of Defendant by Confidential Informant and Confidential Defendant

#### a. Suggestiveness of Identification Procedure

When a court is presented with a challenge to the admission of an out-of-court identification under the due process clause, the following two-step test must be met:

> First, the defendant must prove, by a preponderance of the evidence, that the identification procedure was suggestive. Second, if the court finds that the procedure was suggestive, the State then bears the burden of proving, by clear and convincing evidence, that in the totality of the circumstances the identification, although made under a suggestive procedure, is nevertheless reliable.

*State of Maine v. Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283 (citations omitted) (quotation marks omitted).

Focusing on the first prong, "a defendant can meet his burden by proving by a preponderance of the evidence that the identification procedure 'tended to increase the likelihood of misidentification.'" *State v. Davis*, 2018 ME 116, ¶ 18, ___ A.3d ___ (citing *State v. Kelly*, 2000 ME 107, ¶ 19, 752 A.2d 188). Along with proving the suggestive nature of an out-of-court identification, a defendant "must prove at this initial step that the suggestive procedure was precipitated by 'improper state conduct.'" *Id.* ¶ 19 (citing *Perry v. New Hampshire*, 565 U.S. 228, 245 (2012)). "[I]mproper state conduct occurs when state actors—typically law enforcement

4

officers—are involved in influencing a witness's out-of-court identification in an impermissibly suggestive way." *Id.* ¶ 21. In relation to that concern, the Law Court has made it clear that the showing of a singular photograph in an effort to obtain an out-of-court identification is an "inherently suggestive identification practice." *Nigro*, 2011 ME 81, ¶ 22, 24 A.3d 1283. Going even further, it is suggested that Maine law enforcement officers use a *minimum* of six (6) photographs when creating a photo array lineup. *See* Ferdico & Walton, *Maine Law Enforcement Officer's Manual* 6-22 (2013-2016 ed.)

Here, this court finds the photographic identification of the Defendant by the CI and CD through the testimonies of Detective Cloutier and Officer Gordon violated the Defendant's constitutional right to due process. Looking to the first prong in the *Nigro* test, the actions of law enforcement showing one (1) photograph of the Defendant for identification purposes was unconstitutionally suggestive. First, it is clear that there was improper state conduct due to the showing of the photograph by two (2) members of law enforcement. Second, by both Detective Cloutier and Officer Gordon showing a singular Facebook photograph of the Defendant to the CI and CD, the officers engaged in clearly suggestive behavior. As articulated by the Law Court, showing one (1) photograph in an identification lineup is "inherently suggestive." *Nigro*, 2011 ME 81, ¶ 22, 24 A.3d 1283. Because of the inherent suggestive nature of one (1) photo being shown to the CI and CD, this court finds the Defendant has met his burden of proving by a preponderance of the evidence that the identification procedure "tended to increase the likelihood of misidentification." *Davis*, 2018 ME 116, ¶ 18, ___ A.3d ___ (citing *State v. Kelly*, 2000 ME 107, ¶ 19, 752 A.2d 188). Therefore, this court must move to the second prong of the *Nigro* test and determine whether the identification of the Defendant is still reliable despite the suggestive nature in which the identifications were made.

5

### b. Reliability of Witness Testimony Regarding Identification

Based on the above, an out-of-court identification, even if it is found to be unconstitutionally suggestive under the first prong, can be admissible at trial "if its reliability outweighs the corruptive influence of the suggestive procedure." *Nigro*, 2011 ME 81, ¶ 23, 24 A.3d 1283. It is the duty of the trial court to "allow litigants to test the reliability of a witness's out-of-court identification – pursuant to the Maine Rules of Evidence – when the identification may have been tainted by suggestive circumstances." *Davis*, 2018 ME 116, ¶ 26, ___ A.3d ___. As noted generally, the Maine Rules of Evidence require that the trial court only admit evidence which "is relevant and competent, and that a jury could determine is reliable." *Id.* ¶ 27; *see* M.R. Evid. 102, 104(a), 401-403, 601. "Because unreliable identifications are likely to mislead a jury and create unfair prejudice for defendants, the admission of an unreliable identification into evidence would be error." *Id.* ¶ 28; *see* M.R. Evid. 403.

In addition to a trial court looking at relevancy and competency, to determine the reliability of the identification a court must weigh the following factors under the totality of the circumstances:

> (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. *Nigro*, 2011 ME 81, ¶ 23, 24 A.3d 1283.

Here, it is impossible for this court to determine the reliability of the photographic identification for a multitude of reasons. First, the Waterville PD and the State failed to preserve or present as evidence the photograph shown to the CI and CD for identification purposes. Second,

6

the CI and CD were not present to testify and thus the court has no evidence of their first-hand knowledge regarding their identification of the Defendant. While this court understands the importance of preserving the confidentiality of informants, there are times when the State must sacrifice confidentiality and bring informants in to testify. This is even more imperative if there is a lack of admissible evidence depicting the first-hand knowledge the informants are privy to.

Finally, this court found and the State agreed that Detective Cloutier's and Officer Gordon's testimony as to what the CI and CD told them was inadmissible hearsay, which could not be used for the truth of the matter asserted. At the hearing, this court allowed the testimony for the purposes of outlining what transpired during the investigation, but the actual identifications conveyed to law enforcement from the CI and CD were not admissible for identification purposes. The only means of identifying the Defendant occurred through the out-of-court statements made by the CI and CD when shown the Facebook photograph. Thus, the testimonies of both officers can only be considered by this court for their impression of the investigation process, and not for the actual identifications made by the CI and CD.

The State argued that the out-of-court statements led the officers to take action and their testimony regarding the progression of the investigation is enough to establish identification. The court finds this argument flawed. Law enforcement never physically saw the Defendant engage in any conduct and they based their entire identification of the Defendant on the CI's and CD's single Facebook photo identification. Because this testimony was inadmissible hearsay, this court does not have a proper identification. With no testimony from the CI and CD; with no photographic evidence; and the court's inability to take the law enforcement officer's testimonies for their truth regarding the identification; there is little evidence the court can look to in order to determine reliability. This court does not have ability to weigh the factors outlined above in *Nigro*. There is

7

no admissible testimony in evidence to determine whether the witnesses had an opportunity to view the criminal at the time of the crimes; what degree of attention the witnesses gave; and the accuracy of the witnesses's prior description of the Defendant; or the level of certainty demonstrated by the CI and CD at the confrontation. There is some evidence of the length of time between the crimes and confrontations and it was a relatively short period of time. *Nigro*, 2011 ME 81, ¶¶ 21, 23, 24 A.3d 1283. By the State failing to provide relevant, competent, or *admissible* evidence, the State has failed to show by clear and convincing evidence that the identifications, made under a suggestive procedure, were reliable. This court grants Defendant's Motion to Suppress on the issue of identification.

## II. Voluntariness of Defendant's Statements and Voice Identification
### a. Voluntariness of Defendant's Statements

While the hearing primarily focused on the photographic identification issue, the Defendant wished to preserve the issue regarding the voluntariness of the Defendant's statements. The Defendant made a brief argument regarding the voluntariness of the Defendant's statements during a conversation he had with law enforcement. When dealing with statements or confessions against a person's constitutional privilege against self-incrimination, the State has the burden to prove beyond a reasonable doubt that the statement is admissible. *State v. Collins*, 297 A.2d 620, 627 (Me. 1972). For a statement in this context to be admissible it must be made voluntary. *Id.* at 626. In order for a statement to be voluntary, "it must first be established that it is the result of defendant's exercise of his own free will and rational intellect." *State v. Caouette*, 446 A.2d 1120, 1123 (Me. 1982).

Here, this court finds that the statements made by the Defendant to law enforcement were voluntary. As noted by testimony at trial, this court finds Officer Gordon's testimony credible

8

when he stated the Defendant asked to speak to law enforcement to see if he could offer some information in exchange for help in dealing with his charges. This court further finds Officer Gordon credible that he did in fact read the Defendant his *Miranda* rights prior to conducting the conversation and the Defendant waived his rights.[1] It should be noted that the Defendant was never asked about the facts involving his Aggravated Trafficking charges nor did he talk about that himself. It appears that the Defendant merely told police what information he wanted them to know and did not implicate himself in any way. Based on all of the testimony, this court finds that the Defendant uttered these statements voluntarily based on his "free will and rational intellect" because he wanted to speak to law enforcement and possibly help himself out. The Defendant made these statements after having been read his *Miranda* rights and after having waived these rights. Therefore, this court finds the statements were voluntarily made. This court denies Defendant's Motion to Suppress on the issue of voluntariness.

### b. Voice Identification

The Defendant raises a concern of him being identified by law enforcement based on their familiarization with the Defendant's voice. At the hearing, the Defendant did not articulate a specific constitutional claim regarding this issue, but rather said it flowed from the same argument above regarding voluntary statements. The Defendant failed to provide specific argument or evidence relating to this issue at the hearing. Without proper evidence, the court has no basis to suppress potential voice identification and denies the Defendant's Motion to Suppress as to this issue.

---

[1] This court suggests, however, that the State and the Waterville PD record all interviews with defendants regardless of the types of interviews being conducted. By recording all interviews, there would be concrete evidence detailing exactly what was said, how it was said, and accurately capture the overall situation. It would be extremely helpful with these types of hearings.

9

## CONCLUSION

Accordingly, based on the above findings, it is hereby **ORDERED** that Defendant's

Motion to Suppress is **GRANTED** in part and **DENIED** in part.

DATED: _9/17/18_

Judge Eric J. Walker,
Maine District Court

Entered on the docket _9-18-18_

10

STATE OF MAINE                                    CRIMINAL DOCKET
    v.                                            KENNEBEC, ss.
JAHSUN CAMPBELL                                   Docket No   KENCD-CR-2018-00451
C/O KENNEBEC COUNTY JAIL 115 STATE STREET
AUGUSTA ME 04330                                  **DOCKET RECORD**

DOB: 03/12/1990
Attorney: MATTHEW BOWE                  State's Attorney: MAEGHAN MALONEY
          LAW OFFICE MATTHEW D BOWE
          18 PLEASANT STREET
          BRUNSWICK ME 04011-2201
          APPOINTED 03/20/2018

Filing Document: CRIMINAL COMPLAINT         Major Case Type: FELONY (CLASS A,B,C)
Filing Date: 03/19/2018

## Charge(s)

1   AGGRAVATED TRAFFICKING OF SCHEDULE W DRUG   11/01/2017 WATERVILLE
Seq 11072 17-A  1105-A(1)(E)(1)        Class A
    GORDON              / WAT

2   AGGRAVATED TRAFFICKING OF SCHEDULE W DRUG   11/14/2017 WATERVILLE
Seq 11072 17-A  1105-A(1)(E)(1)        Class A
    GORDON              / WAT

## Docket Events:

03/19/2018 FILING DOCUMENT -  CRIMINAL COMPLAINT FILED ON 03/19/2018

03/19/2018 Charge(s): 1,2
           HEARING -  INITIAL APPEARANCE SCHEDULED FOR 03/19/2018 at 01:00 p.m. in Room No.  1

           NOTICE TO PARTIES/COUNSEL
03/20/2018 Charge(s): 1,2
           HEARING -  INITIAL APPEARANCE HELD ON 03/19/2018 at 01:00 p.m. in Room No.  1
           ERIC  WALKER , JUDGE
           Attorney:  LISA WHITTIER
           DA:  CHRISTOPHER COLEMAN
           Defendant Present in Court
03/20/2018 Charge(s): 1,2
           PLEA -  NO ANSWER ENTERED BY DEFENDANT ON 03/19/2018

03/20/2018 BAIL BOND - $10,000.00 CASH BAIL BOND SET BY COURT ON 03/19/2018
           ERIC  WALKER , JUDGE
           Defendant Present in Court

           AND MPT. DO NOT LEAVE STATE OF MAINE. MAY BE REVIEWED. MAY NOT USE/POSSESS ILLEGAL DRUGS
           WITH RANDOM SEARCH/TEST AT ANY TIME.
03/20/2018 BAIL BOND -  CASH BAIL BOND COND RELEASE ISSUED ON 03/19/2018
           ERIC  WALKER , JUDGE
03/20/2018 Charge(s): 1,2
           HEARING -  DISPOSITIONAL CONFERENCE SCHEDULED FOR 05/17/2018 at 08:30 a.m. in Room No.  1

03/21/2018 Charge(s): 1,2

MOTION - MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 03/21/2018

03/21/2018 Charge(s): 1,2
        MOTION - MOTION FOR APPOINTMENT OF CNSL GRANTED ON 03/20/2018
        WILLIAM STOKES , JUSTICE
        COPY TO PARTIES/COUNSEL
03/21/2018 Party(s): JAHSUN CAMPBELL
        ATTORNEY - APPOINTED ORDERED ON 03/20/2018

        Attorney: MATTHEW BOWE
03/21/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ON 03/21/2018

        VIA EMAIL
03/26/2018 OTHER FILING - OTHER DOCUMENT FILED ON 03/26/2018

        NOTICE FROM MAINE PRE TRAIL INDICATING DEF DID NOT WISH TO PURSUE ADMISION TO BAIL AT THIS
        TIME, AND UNDERSTOOD HE WOULD REMAIN INCARCERATED UNTIL    MAY 17, 2018 COURT DATE.

                                COPY SENT TO ATTY BOWE
05/17/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE HELD ON 05/17/2018
        WILLIAM STOKES , JUSTICE
        Attorney: MATTHEW BOWE
        DA: CHRISTOPHER COLEMAN
05/17/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE SCHEDULED FOR 06/07/2018 at 08:30 a.m. in Room No.  1

05/17/2018 Charge(s): 1,2
        HEARING - DISPOSITIONAL CONFERENCE NOTICE SENT ELECTRONICALLY ON 05/17/2018

05/29/2018 Charge(s): 1,2
        SUPPLEMENTAL FILING - INDICTMENT FILED ON 05/24/2018

05/29/2018 Charge(s): 1,2
        HEARING - ARRAIGNMENT SCHEDULED FOR 06/07/2018 at 08:30 a.m. in Room No.  1

05/29/2018 Charge(s): 1,2
        HEARING - ARRAIGNMENT NOTICE SENT ELECTRONICALLY ON 05/29/2018

05/31/2018 MOTION - MOTION TO AMEND BAIL FILED BY DEFENDANT ON 05/31/2018

05/31/2018 HEARING - MOTION TO AMEND BAIL SCHEDULED FOR 06/07/2018 at 08:30 a.m. in Room No.  1

        NOTICE  TO PARTIES/COUNSEL
05/31/2018 HEARING - MOTION TO AMEND BAIL NOTICE SENT ELECTRONICALLY ON 05/31/2018

06/07/2018 HEARING - MOTION TO AMEND BAIL HELD ON 06/07/2018
        WILLIAM STOKES , JUSTICE
06/07/2018 MOTION - MOTION TO AMEND BAIL DENIED ON 06/07/2018
        WILLIAM STOKES , JUSTICE
        COPY TO PARTIES/COUNSEL
06/07/2018 Charge(s): 1,2

HEARING - ARRAIGNMENT HELD ON 06/07/2018
WILLIAM STOKES , JUSTICE
DEFENDANT INFORMED OF CHARGES.
06/07/2018 Charge(s): 1,2
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 06/07/2018

06/07/2018 Charge(s): 1,2
HEARING - DISPOSITIONAL CONFERENCE HELD ON 06/07/2018
WILLIAM STOKES , JUSTICE
06/08/2018 TRIAL - DOCKET CALL SCHEDULED FOR 09/05/2018 at 09:45 a.m. in Room No. 1

06/08/2018 CASE STATUS - CASE FILE LOCATION ON 06/08/2018

J STOKES TO REVIEW MOTIONS
06/08/2018 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 06/07/2018

DA: MATTHEW BOWE
6/9/18 - STOKES, J. - CLERK TO SCHEDULE FOR HEARING
06/08/2018 MOTION - MOTION EXPERT WITNESS REPORT FILED BY DEFENDANT ON 06/07/2018

Attorney: MATTHEW BOWE
06/08/2018 MOTION - MOTION EXPERT WITNESS REPORT GRANTED ON 06/07/2018
WILLIAM STOKES , JUSTICE
06/14/2018 CASE STATUS - CASE FILE RETURNED ON 06/13/2018

06/14/2018 MOTION - MOTION FOR PROTECTIVE ORDER FILED BY DEFENDANT ON 06/06/2018

Attorney: MATTHEW BOWE
TO SEAL SUBPOENA RE: TIMOTHY HOGAN
06/15/2018 HEARING - MOTION IN LIMINE, RULE 17 SCHEDULED FOR 07/24/2018 at 08:30 a.m. in Room No. 1

06/15/2018 HEARING - MOTION IN LIMINE, RULE 17 NOTICE SENT ELECTRONICALLY ON 06/15/2018

TO DA
06/15/2018 HEARING - MOTION IN LIMINE, RULE 17 NOTICE SENT ON 06/15/2018

TO ATTY BOWE WITH MOTION AND SUBPOENAS
06/15/2018 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 08/23/2018 at 01:00 p.m. in Room No. 1

NOTICE TO PARTIES/COUNSEL
06/15/2018 HEARING - MOTION TO SUPPRESS NOTICE SENT ELECTRONICALLY ON 06/15/2018

07/18/2018 OTHER FILING - OTHER DOCUMENT FILED ON 07/18/2018

COPIES OF PROBATION RECORDS OF TIMOTHY STANTON AND TIMOTHY HOGAN FOR IN CAMERA INSPECTION.
IN FILE CABINET IN BETH'S CUBE
07/23/2018 HEARING - MOTION IN LIMINE, RULE 17 NOT HELD ON 07/23/2018

RECORDS RECEIVED
07/23/2018 ORDER - COURT ORDER ENTERED ON 07/23/2018
ERIC WALKER , JUDGE
ORDER AFTER REVIEW OF CONFIDENTIAL PROBATION RECORDS                FULL RELEASE TO
BE REVIEWED BY COUNSEL ONLY.

08/22/2018 TRIAL - DOCKET CALL NOTICE SENT ON 08/21/2018


09/04/2018 HEARING - MOTION TO SUPPRESS HELD ON 08/23/2018
          ERIC WALKER , JUDGE
          Defendant Present in Court
09/04/2018 CASE STATUS - CASE FILE LOCATION ON 08/23/2018


          W/ JUDGE WALKER RE: MOT TO SUPPRESS FROM 8/23
09/04/2018 TRIAL - DOCKET CALL CONTINUED ON 09/04/2018


          MOTION TO SUPPRESS STILL UNDER ADVISEMENT WITH JUDGE WALKER - AGREEMENT W/ JUDGE WALKER
          AND JUSTICE MARDEN - MOVE THE CASE OFF OF SEPT. DOCKET CALL; RESCHEDULED FOR OCTOBER
          DOCKET CALL
09/04/2018 Charge(s): 1,2
          TRIAL - DOCKET CALL SCHEDULED FOR 10/03/2018 at 08:30 a.m. in Room No. 1


          **0730 TIME PUT IN TO GET ATTENTION - ATTY BOWE REQUESTING AFTERNOON SCHEDULING**
09/18/2018 Charge(s): 1,2
          TRIAL - DOCKET CALL NOTICE SENT ON 09/18/2018


          EMAIL
09/18/2018 CASE STATUS - CASE FILE RETURNED ON 09/17/2018


09/18/2018 MOTION - MOTION TO SUPPRESS UNDER ADVISEMENT ON 08/23/2018
          ERIC WALKER , JUDGE
09/18/2018 MOTION - MOTION TO SUPPRESS GRANTED ON 09/17/2018
          ERIC WALKER , JUDGE
          GRANTED IN PART
09/18/2018 MOTION - MOTION TO SUPPRESS DENIED ON 09/18/2018
          ERIC WALKER , JUDGE
          DENIED IN PART
09/18/2018 ORDER - COURT ORDER FILED ON 09/17/2018
          ERIC WALKER , JUDGE
          ORDER ON MOTION TO SUPPRESS                                    IT IS HEREBY
          ORDERED THAT DEFENDANT'S MOTION TO SUPPRESS IS GRANTED IN PART AND DENIED IN PART.

                              COPY TO ATTY BOWE AND DA
                         COPY TO REPOSITORIES
09/18/2018 ORDER - COURT ORDER ENTERED ON 09/18/2018


A TRUE COPY
ATTEST: _____
                    Clerk