MLR/SC #200-21          3 31 21

contact@kennebecda.com

.ATE OF MAINE
KENNEBEC, SS.

UNIFIED CRIMINAL DOCKET
AUGUSTA
DOCKET NO. CR-19-320

STATE OF MAINE    *Mark Bower/Maeghan Maloney*

V.

**DECISION ON MOTION TO SUPPRESS**

QUASHAY PHILLIPS
Δ *Andrew Wright, Esq*    *andrew@ andrewwrightlaw.com*

## INTRODUCTION

The matter before the court is the Defendant's (Quashay Phillips') Motion to Suppress Out-of-Court and In-Court Eyewitness Identifications dated January 21, 2020. The motion to suppress alleges that the 6-person photo array prepared by the Augusta Police Department was impermissibly suggestive and created a likelihood of misidentification.

An evidentiary hearing on the motion was held on January 26, 2021, at which the court received testimony from the following witnesses: Det. Matthew Estes of the Augusta Police Department; Brooke Olum, and; Michael Lovell. Admitted into evidence without objection were the following exhibits: State's Exhibits 1 and 2, being the "Photo Array Instruction Forms" for Ms. Olum and Mr. Lovell, respectively, and; Defendant's Exhibits 1-6, being the 6-person photo array itself. Briefing was completed on March 1, 2021.

Based upon the evidence presented at the testimonial hearing, and after consideration of the written arguments of counsel, the court makes the following findings of fact.

## FACTS

In February 2019, Det. Estes became involved in an investigation into an alleged assault against Brooke Olum. Det. Estes met Ms. Olum at the hospital where she was receiving treatment for a knife wound to her neck. Ms. Olum informed Estes that the person who had assaulted her was dealing drugs in the Augusta area and was from out-of-state. Ms. Olum did not know the assailant's full name, but knew her as "Q" or "QP."

Olum described her assailant as a skinny African American female with tattoos on her hands and neck, who typically wore braids. From this description, Estes began putting together a photo array of African American woman, whom he all knew and, from his perspective, resembled each other at least generally. The photo array prepared by Estes is Defendant's Exhibits 1-6. The array was shown to 4 witnesses, including Ms. Olum and Michael Lovell, her boyfriend at the time. A detective other than Estes presented the array to the witnesses, although Estes was there as well. Two of the witnesses were unable to make any identification from the photo array. Ms. Olum and Mr. Lovell, however, identified photo # 3 (later identified as the Defendant) as the assailant.

Ms. Olum testified at the evidentiary hearing that she knew the Defendant for approximately 2 years prior to the assault, and had met and seen her on numerous occasions – pretty much every time the Defendant was in Maine. She said she was positive of her identification of the Defendant. She also testified that she knew 4 of the females depicted in the photo array.

Mr. Lovell testified that he was Ms. Olum's boyfriend at the time of the assault on February 11, 2019 and he was present when the assault occurred. He was 100% certain of his identification of the Defendant because he had known her for months prior to the assault. He estimated that he had met the Defendant approximately 20 – 25 times. Lovell also testified that he knew one other person in the photo array.

The evidence at the hearing was not clear whether or when Det. Estes became aware that other persons whose photos were used in the array were known to either Ms. Olum or Mr. Lovell, although Lovell testified that "the detective asked me if I knew anyone in the photos." On cross-examination of Det. Estes, counsel for Ms. Phillips attempted to highlight those areas where the woman in the array (except for photo # 3) were dissimilar to the description provided to the police by Ms. Olum. For example, while all 6 of the photos in the array are of African American women, some are not "skinny," some did not have braided hair at the time the photo was taken, and some of the photos reveal the person's neck without any tattoos being visible.

It struck the court that it came as something of a surprise when Ms. Olum, and later Mr. Lovell, testified that they knew some of the other women whose photos were used in the array.

## **DISCUSSION**

Recently, in *State v. Davis*, the Law Court explained that the reliability of a witness's identification may be challenged on both due process and relevancy grounds. For due process purposes, the test is a two-part one.

> First, the defendant must prove, by a preponderance of the evidence, that the identification procedure was suggestive. Second, if the court finds that the procedure was suggestive, the State then bears the burden of proving, by clear and convincing evidence, that in the totality of the circumstances the identification, although made under a suggestive procedure, is nevertheless reliable.

2018 ME 116, ¶ 16, 191 A.3d 1147. *State v. Nigro*, 2011 ME 81, ¶ 21, 24 A.3d 1283.

Here, Phillips has argued that she has met her burden of proof as to the suggestiveness of the photo array complied by Det. Estes, by showing that the 6 African American women depicted in the array did not sufficiently resemble each

other. Were this the only basis for challenging the suggestiveness of the array, the court would have no difficulty in concluding that Phillips had failed to meet her burden of proof as to part 1 of the 2-part test. As pointed out in *State v. Boucher*, "the failure of all participants in the [array] to resemble each other closely" does not necessarily mean that it tended to unfairly single out the defendant. Requiring that all photos in an array closely resemble each other would make it virtually impossible to ever create a permissible photo array or lineup. 376 A.2d 478, 480 (Me. 1977). Moreover, in this case no evidence was presented that any law enforcement officer made any suggestive remark or gesture that was designed to or had the effect of influencing the witnesses in their identifications.

What was presented, however, was testimony that Ms. Olum and Mr. Lovell knew some of the other women in the array (Olum knew 4; Lovell knew 1) and, therefore, could eliminate those women as being the assailant. It is not clear to the court that Det. Estes or any other officer was aware of this information. If they did, good police practice would seem to dictate that such photos not be used as part of the photo array. *See State v. Rolls*, 599 A.2d 421, 423 (Me. 1991). For the purpose of deciding the motion to suppress, the court will assume that Phillips has satisfied her burden of showing by a preponderance of the evidence that the procedure used in creating the photo array was suggestive.

Nevertheless, the court is fully satisfied that the State has met its burden of proving, by clear and convincing evidence, that the identifications of Ms. Phillips by Ms. Olum and Mr. Lovell were reliable under due process and are reliable so as to be relevant under the Maine Rules of Evidence.

Both Ms. Olum and Mr. Lovell were emphatic that they had met Ms. Phillips on many prior occasions and had spent a considerable amount of time with her. This is not a case where eyewitnesses were attempting to identify a stranger. Both witnesses had ample opportunity to view the events of the alleged assault at the time.

4

Both had a high degree of certainty in their identifications of Ms. Phillips as the alleged assailant. Ms. Olum's description of Ms. Phillips to the police was also accurate. Finally, the witnesses were shown the photo array close in time to when the alleged assault occurred. *See generally State v. Nigro*, 2011 ME 81, ¶ 23.

For all of these reasons, the court finds by clear and convincing evidence that in the totality of all the circumstances, the witness identifications by Ms. Olum and Mr. Lovell were reliable under due process and the Maine Rules of Evidence.

## CONCLUSION

The entry is:

The Defendant's Motion to Suppress Out-Of-Court and In-Court Eyewitness Identifications is DENIED.

Dated:  March 31, 2021

William R. Stokes
Justice, Superior Court